# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PAINTERS' DISTRICT COUNCIL NO. 30, INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO,<br><br>    Plaintiff,<br><br>    v.<br><br>ROCK-IT INTERIORS, INC. and EZEKIEL HERNANDEZ,<br><br>    Defendants. | No. 14 C 01177<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

The Painters' District Council No. 30 (the Union) filed this action against Rock-It Interiors, Inc., a construction company, and Ezekiel Hernandez, the company's president.[1] (For convenience, the Court refers to the Defendants collectively as Rock-It.) The Union seeks to enforce a decision by the Joint Trade Board (the Board), which, under the parties' collective bargaining agreements (CBAs), is the tribunal authorized to decide all disputes and grievances. In May 2013, the Union filed a grievance against Rock-It for violating the CBAs by failing to report job sites, make pension contributions, and post wage bonds. The next month, in June, the Board found for the Union, assessing a $13,210,000 fine against Rock-It, who did not appear at the hearing. In February 2014, after Rock-It failed to make any payments, the Union filed this federal action to confirm the Board's

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and 29 U.S.C. § 185 (the Labor Management Relations Act).

award. A few months into the litigation, the parties settled this case; Rock-It agreed to pay a reduced amount in exchange for a release of all claims, signing a settlement agreement and promissory note. But after Rock-It failed to make the settlement payments, the Union reinstated this suit and now moves for summary judgment to enforce the Board's award and the promissory note. Rock-It responds that there is a factual dispute as to whether it received notice of the June 2013 hearing and of the hearing award. For the reasons explained below, the Union's motion is granted.

## I. Background

### A. The Board Hearing

In deciding the Union's motion for summary judgment, the Court views the evidence in the light most favorable to Rock-It, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rock-It Interiors, Inc. is a construction company and signatory to two collective bargaining agreements between the Painters' District Council No. 30, International Union of Painters and Allied Trades, AFL-CIO, and the Finishing Contractors Association of Illinois (of which Rock-It is a member). PSOF ¶¶ 3-4, 9-10; R. 43-3, Anderson Decl. ¶ 5.[2] The two CBAs have effective dates of August 20, 2011 to June 30, 2015 (the 2011 CBA), and July 1, 2014 to June 30, 2016 (the 2014 CBA). PSOF ¶ 9; R. 43-7, 2011 CBA; R. 43-6, 2014 CBA. Under the CBAs, all disputes and grievances must be

---

[2]Citations to the docket are noted as "R." followed by the entry number. Citations to the parties' Local Rule 56.1 Statements of Fact are "PSOF" (for the Union's Statement of Facts) [R. 43]; "DSOF" (for Rock-It's Statement of Additional Facts) [R. 46]; "Defs.' Resp. PSOF" (for Rock-It's Response to the Union's Statement of Facts) [R. 45]; and "Pl.'s Resp. DSOF" (for the Union's Response to Rock-It's Statement of Additional Facts) [R. 48]. Where a fact is admitted, only the asserting party's statement of facts is cited; where an assertion is otherwise challenged, it is so noted.

2

adjudicated by an eight-member Joint Trade Board, where four members are chosen by the Union and four are chosen by the Finishing Contractors Association. PSOF ¶¶ 11-12; 2011 CBA art. 15, §§ 15.1-15.2; 2014 CBA art. 15, §§ 15.1-15.2. The Board has "exclusive and absolute authority to adjudicate and/or adjust any dispute or grievance under this Agreement … ." *Id.* If the Board concludes that an employer has violated the CBA, it "is authorized to fashion, in [its] sole discretion, all appropriate remedies, including but not limited to, awarding actual damages … plus fines … and assessing liquidated damages, interest, costs, reasonable attorneys' fees, administrative expenses, and auditing fees incurred by the Joint Trade Board." PSOF ¶ 14; 2011 CBA art. 15, § 15.6(a); 2014 CBA art. 15, § 15.6(a). And "[a]ny decision or award of the Joint Trade Board shall be final and binding and shall be enforceable as an arbitration award." PSOF ¶ 13; 2011 CBA art. 15, § 15.4; 2014 CBA art. 15, § 15.4.

In May 2013, the Union charged Rock-It with multiple violations of the 2011 CBA, including failing to file reports concerning job sites, failing to make and report pension contributions, and failing to provide a surety bond to guarantee contributions and wages. PSOF ¶ 15; Anderson Decl. ¶ 6. In a May 30, 2013 letter to Rock-It, the Union explained the charges and notified Rock-It of an upcoming Board hearing on June 20. PSOF ¶ 16; R. 43-10, 5/30/13 Notice of Hearing; R. 43-9, Ernest Decl. ¶ 6. The Union mailed two copies of this letter: one via first-class mail, and one via certified mail. PSOF ¶ 16; Ernest Decl. ¶¶ 6-15. Both letters were sent to Rock-It's offices at 59 C Stonehill Road in Oswego, Illinois, which was the

3

company's address from January 2013 to February 2015. PSOF ¶ 8; R. 43-4, Hernandez Dep. 10:8-15. Rock-It does not deny that the Union mailed these two copies; instead, it avers that it never received either copy, even though the Stonehill Road address was correct and Rock-It did not have prior trouble receiving mail there. Defs.' Resp. PSOF ¶¶ 27-29; Hernandez Dep. 11:1-12. The certified copy was in fact returned to the Union and marked "return to sender, unclaimed, unable to forward" with a date of June 25, 2013. PSOF ¶ 27; R. 43-11, 6/25/13 Returned Envelope. But the first-class copy was not returned to the post office or to the Union. PSOF ¶ 28; Ernest Decl. ¶ 17. So the only factual dispute is whether Rock-It received the first-class mail copy of the May 30 notice.

On June 20, 2013, the Board held a hearing on the charges against Rock-It, who failed to appear. PSOF ¶ 30; R. 43-12, Dahl Decl. ¶ 6. The Board found the company liable for $13,210,000 for violating various provisions of the 2011 CBA, and gave Rock-It fifteen days to comply with the decision. PSOF ¶ 33; R. 43-13, 6/20/13 Board Minutes at PDC30-000083. The Board decision was in the form of the June 20 meeting minutes; consistent with normal practice, the Board issued no separate written findings or award. *Id.*; Ernest Decl. ¶ 20. The Union then prepared a letter dated June 25, 2013, informing Rock-It of the Board's decision. PSOF ¶¶ 34-35; R. 43-14, 6/25/13 Notice of Decision; Ernest Decl. ¶¶ 21-22. The Union mailed this letter to Rock-It's Stonehill Road address using both certified and first-class mail. *Id.* And once again, the certified copy was returned and marked "return to sender, unable to forward," with a date of July 22, 2013, PSOF ¶ 36; R. 43-15,

4

7/22/13 Returned Envelope; Ernest Decl. ¶ 23, while the first class copy was not returned to the post office or to the Union, PSOF ¶ 37; Ernest Decl. ¶ 24. Rock-It again does not dispute that the Union mailed two copies of the hearing decision to the correct address but rather contends that it did not receive either copy. Defs.' Resp. PSOF ¶¶ 35-37; DSOF ¶ 19; Hernandez Dep. 17:5-18:2.

### B. The Federal Action

After Rock-It failed to pay the fines, the Union filed this lawsuit on February 18, 2014 to confirm the Board's award. R. 1, Compl. The Union sued under Section 301 of the Labor Management Relations Act, which allows district courts to hear "[s]uits for violation[s] of contracts between an employer and a labor organization … or between any such labor organizations." 29 U.S.C. § 185(a). On April 9, the Union moved for a default judgment, attaching a copy of the June 25, 2013 Board decision, R. 7; R. 7-3, but the Court denied the motion after Rock-It's attorney filed an appearance the next day and later helped prepare a joint status report, R. 14. A few months later, on July 2, Rock-It filed an Answer, denying that it ever received notice of the charges and explaining that it "did not have sufficient information to admit or deny … and, therefore, denies" receiving notice of the Board's decision. R. 15, Answer ¶¶ 12, 17. Rock-It did not file any affirmative defenses or counterclaims, nor did it move to vacate the award at any point.

On November 12, 2014, the parties reached a settlement and filed a joint motion to dismiss with leave to reinstate, R. 24, which the Court granted, R. 26. The settlement agreement and related promissory note obligated Rock-It and Ezekiel

Hernandez, the company's president, to pay the Union a reduced amount of $97,778.60 plus interest over two years, in the form of two down payments of $10,000 each, twenty monthly payments of $3,700, and a final installment of $2,428.54 on September 15, 2016. PSOF ¶¶ 38-41; R. 43-17, Settlement Agreement at 3; R. 43-16, Promissory Note ¶ 1. In the event of default, the note also required Rock-It and Hernandez "to pay all costs of collecting or attempting to collect this Note, or protecting or enforcing such rights, including, without limitation, actual attorneys' fees … in addition to all principal, interest and other amounts payable hereunder." PSOF ¶ 43; Promissory Note ¶ 8. In return, the Union released all claims against Rock-It relating to the Board's award and any violations of the CBA during the disputed time period. Settlement Agreement at 4. The Court allowed the Union to reinstate the federal action by September 30, 2016, at the end of the payment period, if necessary. R. 26.

About six months later, on May 22, 2015, the Union moved to reinstate the action, R. 27, because Rock-It had made the two $10,000 down payments but none of the remaining payments, violating the settlement agreement and defaulting on the note, PSOF ¶ 44; Ernest Decl. ¶¶ 26-27; Hernandez Dep. 23:13-20. After the Court granted the Union's motion, R. 30, the Union filed an Amended Complaint, R. 31, Am. Compl. In addition to a count to confirm the award, the Amended Complaint included a new count for breach of the promissory note. *Id.* ¶¶ 20-27. It also named Hernandez, who was personally obligated under the note, as a Defendant. *Id.* ¶ 7. So on top of the $13,210,000 Board judgment, the Union also

6

requested the unpaid principal on the note (with interest), attorneys' fees, and costs. *Id.* ¶ 27. Rock-It later answered the Amended Complaint, this time pleading an affirmative defense of "failure to notify," and alleging that it "did not have notice of the June 20, 2013 JTB hearing on the charges against it" and requesting the "[Board] decision [to be] held invalid for failure to procure notice." R. 32, Answer to Am. Compl. at 7. But Rock-It still did not file a counterclaim or move to vacate the award.

After discovery closed, the Union filed this summary judgment motion to enforce both the Board decision and the promissory note. R. 41. Rock-It objects, arguing that there is a material dispute as to whether it received copies of the May 30, 2013 Board hearing notice and the June 20, 2013 Board decision. R. 44, Defs.' Resp.

## II. Legal Standard

The Union brought this suit under Section 301 of the Labor Management Relations Act, which allows district courts to hear "[s]uits for violation[s] of contracts between an employer and a labor organization … or between any such labor organizations." 29 U.S.C. § 185(a). The Seventh Circuit has explained that a decision like the one issued by the Board, which is composed of union and employer representatives and is established by the CBA, "is not a genuine arbitration subject to the Federal Arbitration Act (FAA) … ." *Merryman Excavation, Inc. v. Int'l Union of Operating Engineers, Local 150*, 639 F.3d 286, 290 (7th Cir. 2011) (citation omitted) (explaining that although fairness is a factor to consider when reviewing a

FAA award, 9 U.S.C. § 10, it is not a basis to review a joint committee award under the LMRA). Unlike a suit to enforce an award by a "genuine arbitration panel," an action to enforce an award made by entities like the Board is a "breach of a federal labor contract subject to section 301 jurisdiction—not an FAA action." *Id.* (citation omitted). That is, when a party's refusal to comply with an award is unjustified, that refusal is treated as a breach of the relevant CBA. *Id.* But the scope of the lawsuit is still limited: in reviewing an award, courts "are responsible only for the question of arbitrability" and for "whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award," but not for "the potential merits of the underlying claims[] ... ." *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Local 5*, 724 F.3d 939, 944 (7th Cir. 2013) (citations and quotations omitted).

In addition, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be

8

presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that she is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Confirmation of the Board Decision

### 1. Notice Requirement

The parties' only dispute is whether Rock-It's assertion that it did not receive notice of both the Board hearing and the Board decision creates a material dispute as to the award's validity. But neither party addressed the critical issue necessary to resolve this question: the source and standards of the notice requirement. Although it may seem commonsensical that Rock-It should be entitled to notice of a Board hearing or decision, the right must nevertheless be grounded in some legal source, whether statutory, contractual, constitutional, or otherwise. The constitutional option is easily eliminated because due process requires state action, and there was no state action arising from a Board hearing authorized by private contract. U.S. Const. art. XIV, § 1 ("[N]or shall *any state* deprive any person of life, liberty, or property, without due process of law." (emphasis added)).[3] Nor does the

---

[3]Although the district court stated in *Painters Dist. Council No. 30 v. Vinco Painting Inc.* that "[d]ue process provides grounds to review an arbitration award" in a LMRA action

9

LMRA provide any right to be notified of a Board hearing or award. This makes sense, because as described above, Section 301 treats actions to confirm or vacate an award as a breach of contract action and relies on the underlying agreements as the source of rights. *See supra* Section II. Thus, the right to notice should be grounded in the parties' CBAs, but neither the Union nor Rock-It points to the relevant provisions, and as far as the Court can tell, there is no explicit notice requirement in either the 2011 or the 2014 CBAs. The CBAs do state, however, that the Board "ha[s] the right to establish reasonable rules and regulations for its operation and such rules and regulations shall be binding." 2011 CBA art. 15, § 15.3; 2014 CBA art. 15, § 15.3. It is possible that the Board established a notice requirement, but neither side provided the Court with a copy of the Board's rules and regulations. So the Court cannot definitively conclude that Rock-It was entitled to any notice at all.

Of course, almost surely there is some Board rule that provides for notice to the parties, but even so, the parties still have not given the Court any substantive standards to evaluate whether the requirement has been met in this case. That is, who must send the notice—the Union or the Board? Of what? Using what methods? By what time? Is the requirement met by sending or must there be receipt? The outcome depends on these standards. For example, the rules might say that it is enough if a Union *sends* notice. In that case, summary judgment for the Union

---

involving a joint trade board decision, that case provides little analysis, as the issue did not seem to be in dispute. 2008 WL 4878914, at *2. For support, it cited to two distinguishable Seventh Circuit cases involving the Railway Labor Act, under which decisions by the National Railroad Adjustment Board are considered "acts of government." *Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746 (7th Cir. 2008) (citation and quotations omitted), *aff'd*, 558 U.S. 67 (2009); *IBEW v. CSX Transp., Inc.*, 446 F.3d 714, 717 (7th Cir. 2006).

would be proper here because it is undisputed that the Union mailed notice of both the hearing and the award, using both certified and first-class mail, to the correct address. PSOF ¶¶ 8, 16-29, 34-37. So any failure to receive the notice would be inconsequential. On the other hand, if the governing rule required Rock-It to actually *receive* notice, then the Court would have to evaluate the factual dispute.

So summary judgment on this ground cannot be granted, because the Court does not have enough information to determine whether a material dispute exists. But as it turns out, the rules governing notice are not dispositive, as explained in the next section. Even if Rock-It did have a contractual right to notice that was violated, Rock-It failed to challenge the Board's decision in a timely manner, so the Court must uphold the award.

### 2. Statute of Limitations

Even if there was a notice requirement that was violated, the Union argues that Rock-It's defenses are untimely because it failed to make its invalidity argument—namely, that the lack of notice about the June 2013 hearing made the award null—within ninety days of receiving notice of the award, violating the applicable statute of limitations. R. 42, Pl.'s Br. at 8. The Court agrees that Rock-It failed to assert the invalidity of the award within the statute of limitations.

Even though Section 301 does not explicitly set forth a statute of limitations for challenging an arbitration or joint committee award, "[courts] [should] look to the statute of limitations for a comparable action in the forum state." *Teamsters Local No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir. 1989) (citations

11

omitted); *see UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966) ("[T]imeliness of a § 301 suit … is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations."). The Illinois Arbitration Act's ninety-day limitations period applies to Section 301 cases in Illinois because "the collective bargaining agreement is, in this respect, very similar to any of the commercial contracts [the parties] may have executed that contain arbitration clauses." *Plumbers' Pension Fund, Local 130, U.A. v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1269 (7th Cir. 1985); 710 ILCS 5/12(b) (a motion to vacate an arbitration award "shall be made within 90 days after delivery of a copy of the award to the applicant"). And "[w]here the relief sought is to nullify the arbitration award, the only avenue for such relief is a timely suit to vacate." *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996) (citation omitted). So a party's failure to move to vacate "renders the award final" and "precludes [the party] from seeking affirmative relief in a subsequent action to enforce the award." *Id.* (citation and quotations omitted). Thus, "[t]he rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up." *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 434 (7th Cir. 1998) (explaining that the defendant's argument—that an award was invalid because the underlying CBA was also invalid—was made outside the ninety-day window and thus time-barred); *see also Sullivan*, 87 F.3d at 871 (same).[4]

---

[4]Even though the Illinois statute of limitations comes from an arbitration statute, the ninety-day rule applies equally to a decision by a joint committee in Section 301 actions.

Rock-It does not challenge this general rule but objects to its applicability because it insists that it never received notice of the award so the statute of limitations was never triggered. Defs.' Resp. at 6. But even assuming that Rock-It never received *the Union's* first-class mailing, it is undisputed that at some point, it received both notice of and a copy of the award from a different source—namely, from the pleadings in this lawsuit. Hernandez admits that he first became aware of the Board decision when this lawsuit was filed on February 18, 2014. Hernandez Dep. 17:5-19. But this is not the operative date, because the plain language of the Illinois law provides that the limitations clock starts ticking "after *delivery* of a copy of the award" and not just awareness of it. 710 ILCS 5/12(b) (emphasis added). And because the Union did not attach a copy of the award to its Complaint, the Court must draw the inference (at this summary judgment stage) that the award was not actually delivered to Rock-It on that February 18 filing date.[5] Compl. But later,

---

*E.g.*, *B & M Transit, Inc.*, 882 F.2d at 275 (applying the state's arbitration statute of limitations to a decision by a joint grievance committee panel comprised of management and labor representatives); *Heat & Frost Insulators, Local No. 19 v. Insulation Sys., Inc.*, 346 F. Supp. 2d 991, 996 (E.D. Wis. 2004) ("[D]ecisions of such 'joint committees' [are] tantamount to arbitration awards." (citations omitted)). Indeed, the parties' CBAs state that "[a]ny decision or award of the Joint Trade Board shall be final and binding and shall be enforceable as an arbitration award." 2011 CBA art. 15, § 15.4; 2014 CBA art. 15, § 15.4.

[5]Some cases state that "[t]he 90 day limitation period began to run on the day [the defendant] became aware of the award," *West*, 2002 WL 1046703, at *4, while others explain that "the language of the Illinois statute explicitly provides that the limitations period for challenging an arbitration award begins to run upon delivery of a copy of the award, not upon notice that the award has been issued," *Local 165 v. DEM/EX Grp. Inc.*, 2010 WL 971811, at *1 (C.D. Ill. Mar. 11, 2010); 710 ILCS 5/12(b). The Court adopts the latter approach, which also seems to be the consensus of state-court decisions. *E.g.*, *Hough v. Howington*, 627 N.E.2d 36, 39 (Ill. App. Ct. 1993) (petition to vacate is timely if it is filed ninety days after delivery of a copy of the award). Even if the Court adopted the date of awareness, that would not help Rock-It, as the statute of limitations would have been triggered on the even earlier date of February 18, 2014, when the Complaint was filed (or February 25, 2014, when Rock-It was served, R. 6).

when the Union moved for a default judgment on April 9, 2014, it attached a copy of the Board meeting minutes. R. 7, Mot. for Default J.; R. 7-3, Exh. A-2, 6/20/13 Meeting Minutes. These June 20, 2013 meeting minutes constituted the final Board decision. PSOF ¶ 33; Ernest Decl. ¶ 20. A day later, on April 10, counsel for Rock-It entered an appearance. R. 9. So it is undisputed that as of April 10, 2014, Rock-It received a copy of the Board decision through the docket filings, triggering the statute of limitations. Thus, the limitations period expired ninety days later, on July 9, 2014. *See, e.g.*, *Local 165 v. DEM/EX Grp. Inc.*, 2010 WL 971811, at *1 (C.D. Ill. Mar. 11, 2010) (explaining that the statute of limitations could be triggered by receiving a copy of the award through a pleading during litigation).

Rock-It's challenge to the award is therefore time-barred because Rock-It failed to move to vacate the Board decision by July 9. In fact, Rock-It has *never* moved to vacate the decision. In its July 2, 2014 Answer to the Union's original Complaint, Rock-It simply denied the allegation that it received notice of the June 20 Board hearing. Answer ¶ 12. And in response to the allegation about receiving notice of the Board decision, Rock-It stated that it "[did] not have sufficient information to admit or deny the allegations and, therefore, denies the same … ." *Id.* ¶ 17. But this cannot be construed as a motion to vacate, as Rock-It asserted no counterclaims or even an affirmative defense. And the Seventh Circuit has emphasized that "the only avenue for … relief is a timely suit to vacate." *Sullivan*, 87 F.3d at 871 (citation omitted); *see also Domas Mech. Contractors, Inc.*, 778 F.2d at 1268 ("[T]he company's defense to the award's enforcement involves an attack on

the award's validity, an attack the company could have made in an action to vacate the award."); *William Charles Constr. Co., LLC v. Teamsters Local Union 627*, 2015 WL 758553, at *4 (C.D. Ill. Feb. 23, 2015) ("As a result, a party's failure to move to vacate an arbitration award within the prescribed time period renders the award final … ."); *Illinois Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO v. West*, 2002 WL 1046703, at *2 (N.D. Ill. May 23, 2002) (defendants' letter to the Union disagreeing with the award did not stop the statute of limitations, because any challenge should have been in the form of a motion to vacate); *Sullivan v. Maverick Pools, Inc.*, 2001 WL 185514, at *3 (N.D. Ill. Feb. 26, 2001) (defendant's failure to vacate the award within ninety days of receiving notice barred any challenges to the award).

Similarly, Rock-It's Answer to the Union's Amended Complaint was not a motion to vacate. That Answer asserted "failure to notify" as an affirmative defense and "respectfully request[ed] any [Board] decision [to be] held invalid for failure to procure notice." Answer to Am. Compl. at 7. Again, Rock-It stated no counterclaim. And even if the affirmative defense could be construed as a motion to vacate, it was untimely, because it was asserted on August 3, 2015, almost a year and four months after Rock-It received a copy of the award in the Union's default motion. In sum, even after giving every reasonable inference to Rock-It, its current challenge to the award is untimely. Summary judgment is granted to the Union on Count One of the Complaint to confirm the award.

## B. Breach of Promissory Note

Summary judgment for the Union is also proper on Count Two, which is for breach of the promissory note. It is undisputed that Rock-It signed a valid settlement agreement and promissory note and then breached these agreements when it failed to make the required payments. PSOF ¶¶ 38-48. Rock-It offers no independent arguments opposing summary judgment on this count aside from its general arguments about lack of notice. But failing to receive notice of the Board hearing and the Board decision is not a defense to the separate breach of contract claim in Count Two. So the Court also grants summary judgment on this count too.

## IV. Conclusion

For the reasons previously discussed, the Union's motion for summary judgment [R. 41] is granted. The Board decision is confirmed and liability on the unpaid part of the promissory note is $81,735.79, against both Defendants. Contractual attorney's fees and costs are also awarded. Any attorneys' fees and costs motion may be made after following Local Rule 54.3. The status hearing of June 27, 2016 is vacated.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 7, 2016